FILED
IN CLERKS OFFICE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

2004 P 12: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action No. 04-CV-10040-REK

INTAC INTERNATIONAL, INC.

    Plaintiff,

v.

ACORP d/b/a ROOTERMAN
DONALD MACDONALD
    Defendant.

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANTS ACORP d/b/a ROOTERMAN'S MOTION FOR SUMMARY JUDGMENT

---

### Facts and Travel

Intac International, Inc. (hereinafter "Intac") a Massachusetts Corporation, is the sole owner of Wintac™ software, and has been since its initial creation. This original work was released in January 1990 for the DOS operating system. The software product is designed to assist tradesman in the operation of their business. In October 1996 the original Wintac version 1.0 for Windows was released. Subsequent versions were release including Wintac 1.5 in October 1997, version 2.1 in February 1999. See Torti Affidavit.[1] Exhibit 1 annexed.

---

[1] Defendant alleges at page 3 of his memorandum that A-Corp never purchased Wintac 2.1, where in fact Defendant

1

Throughout its history subsequent releases have remained similar in look feel and the expression as evidenced by the screen shots. See Exhibit 2.

### *Wintac Sales to Defendants and the Scope of the Licenses*

1. The Wintac product with a single user site license (see Torti affidavit Exhibit 1) was first licensed to Defendant A-Corp on or about September 18, 1998. Donald MacDonald signed for the license. A review of that Single –User License as well as the Network Edition sold to Defendants, infra. Contained very clear language stating, "to install and use WINTAC on each office computer operated by the company named below at one and only one physical location." See Exhibit 6 of Defendants Exhibits. Defendant MacDonald placed an order for Wintac 2.1 Upgrade for the Single-User License on or about April 9, 1999. Torti Aff., Id. He placed an order for the Network edition of Wintac Single User License on May 27, 1999. On November 20, 2001 a "Gena" from A-Corp ordered Wintac Pro 2002 Upgrade. Torti Aff., Id. The grant clause of the Wintac license is clear. Scope is limited to a single business location. That evidence is uncontroverted. Duplication and transfer of the Wintac software to third franchisees absent the purchase of a license from Intac is clearly prohibited. See also Defendants Exhibits 3 and 6 annexed to Defendant's Memorandum in Support of its Motion for Summary Judgment.

### *Registration Requirements and the Registration of Wintac Software*

Registration of a work with the Copyright Office provides several benefits to a Plaintiff in an infringement action, although not a condition of copyright protection, its is a prerequisite to suit under the Copyright Act. See *Data General v. Grunman Systems Support*, 36 F. 3rd 1147 at 1160 (1st Cir. 1994) and 17 U.S.C. § 411 (a). The issuance of a certificate of

---

MacDonald purchases 2.1 personally and added the name "Roterman." See Torti Affidavit.

registration is prima facie evidence of the validity of the copyright. *Data Gen.*, Id. Inadvertent errors in the deposit application do not affect copyright validity. *Data General*, Id., Citing *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F. 2d 663. This circuit has not adopted strict compliance. In general, software is amenable to copyright protection. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F. 3d 807 (1st Cir.1995). Once Copyright registration is obtained the Plaintiff's copyright claim turns on whether defendant's copied the copyrighted protected elements. See *PRG-Schultz International, Inc. v. Kirix Corporation*, (N.D. Ill. 2003) Intact filed for deposit with the copyright and registration issued on April 15, 1999, TX-4-861-038, meeting the condition precedent to the filing of this action under 17 U.S.C. § 411 (a). A genuine issue of material fact exists as to whether the protected elements of the registered copy have been infringed by defendants. In the light most favorable to Plaintiff/nonmoving party there is sufficient cause to deny Defendant's motion.

A side by side comparison of the screen shots shows similar protectible expression to all versions of the Plaintiff's software. Copyright laws protect distinct aspects of a computer program. Patent law provides protection for the process or method performed by a computer in accordance with a program, whereas copyright protects only "the expression of that process or method. *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F. 2d 832 (Fed. Cir. 1992). Copyright protection extends only to those components of a work that are original to the author. See *Feist Pubs, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.340 (1991). "The sine qua non of copyright is originality... that it possesses at least some minimal degree of creativity." *Feist*, Id. See also *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F. 3d 1504 (1st Cir. 1996). A review of the screen shots demonstrates that modicum of creativity has been clearly achieved.

### *Legal Standard*

Under Federal law, "a district court may not grant summary judgment unless the pleadings and supporting documentation reveal no genuine issue of material fact." See *Lichenstein v. Consolidated Services Group*, 173 F. 3d 17 (1st Cir, 1999); Fed. R. Civ. P. 56 (c). Furthermore, "all reasonable inferences based on the record must be construed in the non-movant's favor." Id.

Summary judgment, ordinarily a valuable method for the disposition of cases prior to trial, is only appropriate where there exists no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); fed. R. Civ. P. 56.

### *Defendant's Claim*

In the case at bar, Defendants knowing the infringing software is registered and an original work seek to misapply a hair splitting six circuit registration requirement imposed on a rewritten and rearranged song by a subsequent owner to attempt to invalidate the expression protected by Plaintiff's copyright, in order to justify their wholesale pirating of Plaintiffs work.

Defendants attempt to show, quite errantly, that Defendants have a right to infringe a derivative work, overlooking Section 106 of the Copyright Act, which provides that "the owner of copyright under this title has the exclusive right to… prepare derivative works based on the copyrighted work." 17 U.S.C. §106. See also *1-800 Contacts, Inc. V. When.com and Vision Direct* (S.D.N.Y. December 22, 2003, at page 33). Defendants cite *Murray Hill Publications v. ABC Communications*, 264 F. 3rd 622 (6th Cir. 2001). That case is clearly distinguishable.

4

There a song was offered by an author to use as a radio personalities introduction of his radio program. The new song had a different name than the first song, the new was J.P.'s theme while the original song was called Jeanette. Lyrics were changed. Clearly there was a new original work as J.P's Theme derived from Jeanette. After the radio personality died the author claimed the ongoing use by the radio station amounted to infringement. The action was barred as there was no registration for the new song, J.R.'s Theme. In conducting its analysis the *Murray* Court noted that in software protection extended as soon as versions of software and manuals were "fixed n a tangible medium of expression" without regard to registrations as the author, Xerox, was the author of the preexisting works. See *Murray Hill*, Id at 630. Here all of the original work, and its protectible expression contributed by the author, in this case Intac, would be protectible under even the most strict reading of the *Murray Hill* decision that Defendant relies upon.

Here Intac's claim is based on its original protected registered expression. Clearly if Intac chooses to make derivatives, it is their right and a failure to register does not thrust the registered protected expression into the public domain as Defendants would effectively claim. Unfortunately for Defendants the work here is protected by the original copyright. Even a license to prepare a derivative work does not authorize the preparer to sell copies of it. Making and selling are two distinct rights under 17 U.S.C. § 106 (1) (2). The copyright owner can assign one without granting the other right. *Itofca v. Megatrans Logistics*, 322 F. 3d 928, at 929 (7th Cir. 2003). Here no license to produce derivatives through a developers license was ever granted. Clearly such rights remain in Plaintiff. What was infringed must be apportioned under a *Feist* standard. Here Defendants purchased the registered copy. There was no right to resell. For such

obtuse logic, in which Defendants seek exonerations and absolution, to gain even the consideration of the court would be without merit. A derivative work would have to have such editorial revisions, annotations, or other modifications which, as a whole, represent an original work of authorship, or a wholesale change in expression. See U.S.C. § 101 and *!-800, Id.* ay 35. The screen shots show the same original work of authorship. There is no derivative work in that Defendants infringed material that they could lay claim to as their own original work, unlike the new song in *Murray Hill*. In fact here the Plaintiffs claim verbatim copying. Certainly much if not all the expression in the registered work has been infringed. Defendant never purchased a developers license from which they have created a derivative expression. Here we have something much simpler and direct, namely literal copying. Defendant has purchased version 2.1, which does include the same authors original expression. He is alleged to have illegally copied 2.1 along with subsequent releases. The look and feel is consistent. It is the same expression. See compilation of various screen shots Exhibit 2.[2] If the court sees fit, at trial, it could apportion out any diminimus changes for subsequent finding of infringement of later releases, which include the same essence, provided those elements were also infringed.

Defendant also claims that there is no evidence Defendant's sold the software to anyone. Of course this is a most favorable reading of the copyright act, for which violations include copying, not resale. 17 U.S.C. § 106 (1). Of course Plaintiffs allege illegal bundling or copying by Defendants which would constitute infringement. It is clear that the demonstration disks provided to MacDonald by Plaintiff at the tradeshow did not have the software alleged to be

---

[2] At trial Plaintiffs will present screen shots of both the Wintac software expression, as registered and the ASOFT software, as well as any Wintac found transferred to franchisees by Defendant's to prove the infringing copying.

infringed, and for which the Plaintiff received calls seeking technical assistance from customers.

It is likely Plaintiff Intac will ultimately prevail in its copyright action against Defendants because it can prove two essential elements of a valid copyright claim, that is, ownership of the protectible expression of the copyrighted software and that Defendants copies that software without permission or license to do so. *Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates, Inc.*, 119 F. 3rd 55, 59 (1st Cir. 1997); *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.* 843 F. 2nd 600, 605 (1st Cir. 1988), all Plaintiff must do to defeat Defendant's Motion for Summary Judgment is this genuine issue of material fact. Fed. R. Civ. P. 56 (c). As noted these issues Defendants have actually created a Genuine Issue of Material Fact with Respect to Access to Plaintiff's Copyrighted Materials. Plaintiff's can show access through the sales. Plaintiff in it's verified complaint, as well as affidavits he will pro-offer will show unlicensed software is found with Defendant's franchisees. The elements of access and substantial similarity are met. The genuine issue of fact for trial is what Defendants provided to Franchisees. This will be induced through the adverse testimony of MacDonald as well as Intac employees who received technical calls, confirmed that the franchisees were using intact, and that the demonstration disks previously provided for marketing purposes contained no functional software. (Affidavits on this point will be pro-offered well in advance of the September hearing.) See also Restivo affidavit, Exhibit 3.

Therefore, genuine issues of material fact defeat summary judgment on even the narrow issue of access.

### *Defendants Materials are Substantially Similar to Plaintiff's Copyrighted Materials.*

Expert opinion is not necessary to establish a substantial similarity of expression; the test is the reaction of the ordinary reasonable person. *Eisenman Chemical*, 595 F.Supp. at 146. Substantial similarity is an elusive concept and not subject to precise definition. It refers to the expression of the copyright holder's concept. *Concrete Machinery*, 843 F.2d at 606. Defendants ASOFT software is believed to be the same software as Wintac. A side by side comparison at trial will demonstrate that. The calls to Intac technical support by Defendant's franchisees for Wintac user assistance demonstrate the substantial similarity of the versions. What elements of the registered software were infringed by the Defendants acting outside the scope of their license presents a genuine issue of material fact for trial. The appropriation of another's labor and skill in order to publish a rival work without expenditure of the time and effort required by independent work constitutes copyright infringement. *Eisenman Chemical*, 595 F.Supp. at 146. Intac worked for years to perfect the expression of the form of software sell to their customers. There is a definite originality inherent in the work. For Defendants to argue that they did not infringe Intac's materials because they only copied the unregistered versions is outrageous. That protected expression is registered with the copyright office in version 2.1.

### *Allowing Defendant's Motion For Summary Judgment Would Undermine The Fundamental Nature Of Copyright Protection*

The Constitution of the United States of America provides, in pertinent part "The Congress shall have Power. . . to Promote the Progress of Science and useful Arts, by securing

for limited Times to Authors and Inventors, the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. 1, § 8. The Supreme Court has noted " '[This] limited grant is a means by which an important public purpose may be achieved. It is intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired. The monopoly created by copyright thus rewards the individual author in order to benefit the public.'" *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546 (1985) (citing *Sony Corp. v. Universal Studios, Inc.*, 464 U.S. 417, 429 (majority opinion) & 477 (dissenting opinion) (1984)) (emphasis added). The United States Supreme Court, citing the well known copyright treatise of Professor Nimmer, further recognizes the previously articulated Golden Rule with respect to copyright. "Take not from others to such an extent and in such a manner that you would be resentful if they so took from you." Id. at 550 n.3.

### *The Existence of Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiffs' Lanham Act Claims*

### *Standard for Summary Judgment*

Under Federal law, "a district court may not grant summary judgment unless the pleadings and supporting documentation reveal no genuine issue of material fact." See *Lichtenstein v. Consolidated Services Group*, 173 F.3d 17 (1st Cir. 1999); Fed. R. Civ. P. 56(c). Furthermore, "all reasonable inferences based on the record must be construed in the non-movant's favor." Id.

Summary judgment, ordinarily a valuable method for the disposition of cases prior to

trial, is only appropriate where there exists no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ. P. 56.

### *Summary Judgment Is Inappropriate Where There Exist Genuine Issues Of Fact On The Claim of a Lanham Act Violation*

Defendant's acts as herein constituted, set forth a claim for "Reverse Palming" under Section 43 (a) of the Lanham Act, 15 U.S.C. (s) 1125 (a). Section 1125, entitled "False designations of origin, false descriptions, and dilution forbidden" states: (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

A plaintiff alleging reverse palming off under the Lanham Act must prove the following: (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."

10

*Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) (citing *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 781-85 (2d Cir. 1994). The plaintiff is required to prove that "the defendant misrepresented an inherent quality or characteristic of the defendant's product." *National Ass'n of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 917 (2d Cir. 1988).

Defendant's website existing prior to this litigation advertised an ASOFT Software, which Plaintiff's believe describes the WINTAC software, merely repackaged and sold without license to Rooterman franchisees. Clearly this conduct as stated herein constitutes a false designation of origin under the Lanham Act, and said false designation is likely to cause confusion among consumers, and said false designation and "reverse palming" has caused a loss of profits and damages injuring Intac. Intac began receiving calls for service from franchisees who had purchased this repackaged software. See Verified complaint signed by Intac's Restivo. This is a clear and textbook example of "palming off" which presents a genuine issue of fact for the court to consider. Further the ASOFT name on the Wintac product sold to the same tradesmen Intac targets demonstrates the severity of the claim. A copy of the web promotional materials defendants claim in their memorandum doesn't exist is annexed here as Exhibit 4.

Defendants claim they are entitled to judgment as matter of law on Intac's claim of Lanham Act violations. The record in this case, however, is replete with factual dispute over the conduct of Defendant's. This claim is part of, yet independent from, Intac's other claims. Clearly the repackaging and false designation of Plaintiff's software under its own false name is distinct from the copying of the Wintac software. Defendants have offered no support on the lack of validity of the Lanham Act claim or the origin of its ASOFT Software. Incredibly neither Mr. MacDonald nor Mr. Dundey has yet told Plaintiff's the source and origin of ASOFT. As

11

discovery progresses they are expected to answer those questions.[2] Therefore, Defendant's unsupported request that this count be dismissed should be summarily denied.

WHEREFORE, Plaintiffs demand that Defendants Motion For Summary Judgment to Dismiss be denied.

                                        INTAC INTERNATIONAL , INC..
                                        By its attorneys,

                                        _____
                                        John J. Flanagan BBO#649222
                                        TORTI FLANAGAN
                                        146 Main Street
                                        Norfolk, MA 02056
                                        (508) 541-4100

Dated: July 12, 2004

## CERTIFICATION

The undersigned hereby certifies that a copy of the within answer and counterclaim was sent via US mail to William H. McCarter, Jr. Esq. ACORP Legal Department PO Box 1044 Winchester, MA01890 on July 12, 2004.

_____

M:\IntacLTOppositionSJ71004.doc

---

[2] The Plaintiffs, at trial, will pro-offer side by side comparisons of Wintac and the infringing software, both ASOFT and any Wintac software transferred by Defendants to franchisees.